## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| BEACON NAVIGATION GMBH, | Case No. 2:13-cv-11410-MAG-EAS |
| Plaintiff, | Hon. Mark A. Goldsmith |
| | Mag. Elizabeth A. Stafford |
| v. | |
| BAYERISCHE MOTOREN WERKE AG, BMW OF NORTH AMERICA, LLC, AND BMW MANUFACTURING CO., LLC, | |
| Defendants. | |
| BEACON NAVIGATION GMBH, | Case No. 2:13-cv-11416-MAG-EAS |
| Plaintiff, | Hon. Mark A. Goldsmith |
| | Mag. Elizabeth A. Stafford |
| v. | |
| HYUNDAI MOTOR COMPANY, HYUNDAI MOTOR AMERICA, AND HYUNDAI MOTOR MANUFACTURING ALABAMA, LLC, | |
| Defendants. | |

BEACON NAVIGATION GMBH,

                               Plaintiff,

      v.

KIA MOTORS CORPORATION, KIA
MOTORS AMERICA, INC., AND KIA
MOTORS MANUFACTURING
GEORGIA, INC.,

                         Defendants.

Case No. 2:13-cv-11441-MAG-EAS

Hon. Mark A. Goldsmith
Mag. Elizabeth A. Stafford

## <u>OPINION AND ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS BEACON'S INDUCED INFRINGEMENT CLAIMS (No. 13-11410, ECF No. 61; No. 13-11416, ECF No. 56; No. 13-11441, ECF No. 56)</u>

In the above-captioned patent infringement cases, plaintiff Beacon Navigation GmbH ("Beacon") alleges that defendants Bayerische Motoren Werke AG, BMW of North America, LLC, and BMW Manufacturing Co., LLC (collectively, "BMW"), Hyundai Motor Company, Hyundai Motor America, and Hyundai Motor Manufacturing Alabama, LLC (collectively, "Hyundai"), and Kia Motors Corporation, Kia Motors America, Inc., and Kia Motors Manufacturing Georgia, Inc. (collectively, "Kia") (all of them, collectively, "Defendants") infringe a Beacon patent on vehicle navigation technology, U.S. Patent No. 5,862,511 (the "'511 Patent"). Presently before the Court are Defendants' motions to dismiss Beacon's induced infringement claims. The parties have submitted briefs explaining their positions on whether dismissal is appropriate.[1] Pursuant to Local Rule 7.1(f)(2), the Court will decide Defendants' motions to dismiss without a hearing. E.D. Mich. LR 7.1(f)(2). For the reasons stated in this opinion and order, the Court will **DENY** Defendants' motions to dismiss.

---

[1] Case No. 2:13-cv-11410, ECF Nos. 61, 64, 66 (BMW); Case No. 2:13-cv-11416, ECF Nos. 56, 57, 59 (Hyundai); Case No. 2:13-cv-11441, ECF Nos. 56, 57, 59 (Kia).

## I.    PROCEDURAL HISTORY

The above-captioned cases once belonged to a larger group of related patent infringement cases involving additional defendants and additional Beacon patents. While their procedural history involves the original venue, the United States District Court for the District of Delaware (the "District of Delaware"), and a proceeding in the United States International Trade Commission (the "ITC"), the cases largely owe their current posture to a succession of proceedings in the United States Patent and Trademark Office (the "USPTO").

On October 11, 2011, Beacon filed thirty-eight patent infringement cases in the District of Delaware, alleging that nineteen groups of defendants, comprising fifty-six companies in the automotive industry, infringed eight Beacon patents on vehicle navigation technology.[2] The same month, on October 21, 2011, Beacon filed a parallel complaint in the ITC, alleging that the defendants infringed four of the Beacon patents.[3] On November 23, 2011, the ITC instituted an investigation, but on April 13, 2012, Beacon withdrew the complaint and terminated the investigation before a final determination. On March 20, 2013, after staying the district court cases

---

[2] In addition to the '511 Patent, Beacon alleged that the defendants infringed U.S. Patent Nos. 5,819,201; 5,878,368; 6,029,111; 6,163,269; 6,178,380; 6,360,167; and 6,374,180.

[3] The investigation was captioned *In re Certain Auto. GPS Navigation Sys., Components Thereof, & Prods. Containing Same* and assigned Inv. No. 337-TA-814.

pending the ITC investigation, the District of Delaware transferred them to this District.

After the transfer, beginning on August 12, 2013, the Court stayed the district court cases pending a succession of USPTO proceedings. In response to Beacon's infringement allegations, the defendants and third-parties filed various requests for reexamination and *inter partes* review in the USPTO, seeking to initiate proceedings to review the patentability of the asserted claims of the Beacon patents. Following initial requests filed in the 2011-2012 timeframe, when the district court cases were stayed pending the ITC investigation, the requestors filed additional requests in the USPTO throughout the 2014-2018 timeframe, each time seeking review of the asserted claims that survived the previous USPTO proceedings.

Ultimately, the USPTO cancelled the asserted claims of seven Beacon patents, leaving only the '511 Patent and asserted Claims 1 and 3. As to the '511 Patent, the USPTO ordered five reexaminations. After consolidating two of the reexaminations, the USPTO issued four reexamination certificates confirming the novelty and non-obviousness of Claims 1 and 3. *Ex Parte* Reexamination Certificate Nos. 5,862,511 C1, 5,862,511 C2, 5,862,511 C3, and 5,862,511 C4. In addition to twenty-eight district court cases involving only other Beacon patents, by stipulation of the parties, the Court has dismissed many of the remaining ten district court cases involving the

'511 Patent. Only the three above-captioned cases against BMW, Hyundai, and Kia remain pending.

On August 19, 2022, following the conclusion of the last USPTO proceeding, the Court lifted the stay. On November 18, 2022, to reflect their current posture, Beacon filed first amended complaints ("FACs") in the above-captioned cases, alleging that BMW, Hyundai, and Kia infringe Claims 1 and 3 of the '511 Patent.[4] In the FACs, Beacon asserts both claims of direct infringement and claims of induced infringement. On December 2, 2022, Defendants filed their instant motions to dismiss, asking the Court to dismiss the induced infringement claims under Federal Rule of Civil Procedure 12(b)(6).[5]

---

[4] Case No. 2:13-cv-11410, ECF No. 60 ("BMW FAC"); Case No. 2:13-cv-11416, ECF No. 55 ("Hyundai FAC"); Case No. 2:13-cv-11441, ECF No. 55 ("Kia FAC").

[5] In the briefs, BMW and Kia raise the issue of whether Beacon asserts claims of contributory infringement. The parties explain that they discussed the issue during the Local Rule 7.1(a) meet and confer process. Counsel for Beacon represented that Beacon is not asserting contributory infringement claims. While BMW cites Beacon's representation and only moves to dismiss the induced infringement claim, Kia does not mention the discussion and additionally moves to dismiss any contributory infringement claim. In opposition to Kia's motion to dismiss, Beacon confirms its representation on the record. Because Beacon has mooted the issue, the Court will treat all motions as only motions to dismiss the induced infringement claims.

## II.    BACKGROUND

### A.    '511 Patent

The '511 Patent, entitled "Vehicle Navigation System and Method," was filed in the USPTO on December 28, 1995 and issued on January 19, 1999. The '511 Patent expired on December 28, 2015, twenty years after its filing date. *See* 35 U.S.C. § 154(a)(2).

The '511 Patent is directed to vehicle navigation technology. In the written description, the '511 Patent begins with a helpful background section on prior navigation systems. In general, to support a vehicle's navigation functionality, such as route guidance and turn-by-turn navigation, navigation systems work by continuously determining the vehicle's current position. To determine the current position, navigation systems use information from a Global Positioning System (GPS), motion sensors, and a map database. '511 Patent 1:16-2:25. In connection with these components, as the vehicle moves and the once-current position becomes a previous position, navigation systems can use different techniques to re-determine the current position. For example, a GPS position based on information from space-based satellites can be used for the current position. *Id.* 1:16-18. Alternatively, using "propagation" (also known as "dead reckoning") techniques, information from the motion sensors can be used to propagate the current position from the previous position. *Id.* 1:63-2:3. Moreover, using "map matching" techniques, information

from the motion sensors can be matched to a position in the map database, and the resulting map-matched position can be used for the current position. *Id.* 2:13-25.

The '511 Patent describes a navigation system that uses GPS velocity information to implement purportedly improved propagation techniques. *Id.* 2:32-3:13. Before turning to the disclosed propagation techniques, it is important to note that the '511 Patent assumes knowledge of math principles, two of which are relevant to the asserted claims. First, position and velocity are "vectors." This means that, in addition to their distance and speed (i.e., magnitude) components, position and velocity have a heading (i.e., direction) component. Accordingly, map-matched positions have map headings, and GPS velocities have GPS headings, that point, for example, in the East and North directions. *Id.* 2:32-36, 7:67-8:3. Second, relevant to the disclosed propagation techniques, velocity can be "integrated" to obtain "displacements" (i.e., changes in position) in the directions of the heading. Accordingly, GPS velocities can be integrated to obtain displacements, which can then be applied to the previous position to obtain the current position. *Id.* 15:45-49, 15:58-63, 16:12-16.

In connection with the disclosed propagation techniques, Claims 1 and 3 of the '511 Patent are directed to an embodiment for updating GPS velocity information with a map heading. *Id.* 15:29-44, 15:53-16:22. As shown in Figure 7c, reproduced below, the embodiment involves steps for updating a GPS velocity vector (**200**) with

8

a map heading (**202**) for use in the propagation of a previous position (**191**) to a current position (**206**). *Id.* 15:53-65.



*Fig-7c*

The GPS velocity vector (**200**) has GPS speed and GPS heading components. *Id.* 2:32-36. The map heading (**202**) is based on the heading of the mapped path on which the vehicle is traveling. *Id.* 15:29-34. When the difference between the GPS heading and the map heading (**202**) is within a threshold, the GPS velocity vector (**200**) is rotated to align with the map heading (**202**). *Id.* 15:58-63. The rotated GPS velocity vector (**204**) is then integrated to obtain displacements (**208** and **210**). *Id.* The displacements (**208** and **210**) are then applied to the previous position (**191**) to obtain the current position (**206**). *Id.* 15:63-65.

Claim 1 recites the patented navigation system and Claim 3 recites the patented navigation method:

**1**. An improved vehicle navigation system comprising:

a map database with map information, said vehicle navigation system derives a map heading from said map information; and

a GPS receiver which provides GPS velocity information including a heading, said vehicle navigation system uses said velocity information to propagate a previous position to a current position and interrogates said map database to obtain said map heading information; said vehicle navigation system updates said velocity information with said map heading for propagating said previous position to said current position if the difference between the heading of said velocity information and said map heading are within a threshold, wherein said system rotates said velocity to align with said map heading and integrates the rotated velocity to obtain displacements; said system obtains said current position by applying said displacements to said previous position.

**3**. A method of estimating the velocity of a vehicle known to be on a mapped path comprising:

determining the velocity of the vehicle, the velocity including a heading;

interrogating a map database to obtain a map heading of said mapped path; and

updating said velocity with said map heading if the difference between the heading of said velocity and said map heading are within a threshold;

using said velocity to propagate a previous position to a current position, wherein said step of using includes rotating velocity to align with said map heading and integrating rotated velocity to obtain a displacement and obtaining said current position by applying said displacement to said previous position.

*Id.* 17:11-29 (Claim 1), 17:48-63 (Claim 3).

## B.    Infringement Allegations

In the FACs,[6] Beacon alleges that Defendants infringe Claims 1 and 3 of the '511 Patent in connection with sales of vehicles with GPS navigation systems (the "accused vehicles" and the "accused navigation systems") prior to the '511 Patent's December 28, 2015 expiration date.

As to the patented navigation system, Beacon alleges that Defendants directly infringe Claim 1 by making, importing, and selling the accused vehicles:

> 16. On information and belief, [Defendants] directly infringe, in violation of 35 U.S.C. § 271(a), by making, using, selling, offering for sale, and/or importing in or into the United States, without authority, products that practice the '511 patent, including vehicles with GPS navigation systems installed therein. This infringement includes the manufacture, use, sale, offer for sale and importation of at least the following car models sold by [Defendants] in the United States prior to the expiration of the '511 Patent on December 28, 2015 including, but not limited to: [identifying Defendant-branded vehicles].
>
> 17. Upon information and belief, [Defendants] directly infringe claim 1 of the '511 Patent.

FAC ¶¶ 16-17, ECF No. 60, PageID.3223-3224.

---

[6] For purposes of deciding Defendants' motions to dismiss, the Court need not distinguish between the FACs. With the exception of naming different companies and listing different vehicles, the claims and allegations are generally the same for all of the Defendants. For ease of reference, the Court will cite to the FAC in the lowest numbered case, which is currently the BMW FAC in Case No. 2:13-cv-11410, ECF No. 60.

As to the patented navigation method, Beacon alleges that, with knowledge of the '511 Patent, Defendants induce infringement of Claim 3 by providing the accused vehicles along with instructions to use the accused navigation systems:

> 22. Upon information and belief, [Defendants] had knowledge of the '511 patent based on a letter sent to each of them on September 28, 2011, by the filing of the ITC complaint in Investigation No. 337-TA-814 and by the filing of the initial Complaint in this action.
>
> 23. Upon information and belief, [Defendants] actively induce others (e.g., consumers) to directly infringe the '511 patent, in violation of 35 U.S.C. § 271(b), by providing products with GPS navigation systems, including but not limited to vehicles with navigation, along with instructions, user manuals, or technical assistance actively directing, encouraging or assisting infringement of the '511 patent.
>
> 24. When they follow [Defendants'] instructions to use the GPS navigation system, [Defendants'] customers practice the method of claim 3 of the '511 patent, and directly infringe that claim.

*Id.* ¶¶ 22-24, ECF No. 60, PageID.3226.

## III.   LEGAL STANDARDS

In accordance with Federal Circuit jurisprudence, district courts adjudicating patent cases apply the law of the Federal Circuit to questions pertaining to patent law and the law of the regional circuit to procedural questions. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007). Whether to grant a motion to

dismiss under Federal Rule of Civil Procedure 12(b)(6) is a "purely procedural question" governed by the law of the regional circuit. *Id.*

## A. Pleading

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to make such a showing may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

When deciding a motion to dismiss under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all of the factual allegations contained in the complaint as true. *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). Beyond the complaint, a court may consider "any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss" if the documents are "referred to" in the complaint and "central to" the claims. *Bassett v. Nat'l Collegiate Athletics Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

In order to survive a Rule 12(b)(6) motion, a complaint need only contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### B.    Infringement

The Patent Act grants a patentee the right to exclude others from practicing the patented invention. 35 U.S.C. § 154(a)(1). Thus, whoever "without authority" makes, uses, offers to sell, sells, or imports the patented invention "infringes the patent." *Id.* § 271(a). In addition to describing acts of direct infringement in Section 271(a), the Patent Act codifies theories of liability for indirect infringement in Sections 271(b) and 271(c). Section 271(b) covers induced infringement. Under this provision, whoever "actively induces" infringement is "liable as an infringer." *Id.* § 271(b). Section 271(c) covers contributory infringement through the distribution of a non-staple product that constitutes a "material part" of the patented invention. *Id.* § 271(c). Under this provision, whoever offers to sell, sells, or imports a product "knowing the same" to be especially designed for infringing use and not suitable for substantial non-infringing use is "liable as a contributory infringer." *Id.*

14

Under both theories of liability, indirect infringement requires an underlying act of direct infringement by another party. *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993). To prove direct infringement, the patentee must either point to specific instances of direct infringement or show that the accused product necessarily infringes. *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1275-76 (Fed. Cir. 2004). In addition to underlying direct infringement, indirect infringement requires knowledge of the patent and knowledge of infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015). As opposed to knowledge of the acts that constitute infringement, induced infringement requires "knowledge that the induced acts constitute patent infringement." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011). Similarly, contributory infringement requires that one "knew that the combination for which his component was especially designed was both patented and infringing." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964).

Liability for induced infringement is premised on intent. "Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) (citing *DSU Med. Corp. v. JMS Co. Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (*en banc* in relevant part)). "Thus, a person infringes by actively

and *knowingly* aiding and abetting another's direct infringement." *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988). "While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice." *Id.* "Evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936 (2005) (quotation, alteration, and citations omitted).

## IV.   ANALYSIS

As noted above, Beacon alleges that Defendants directly infringe Claim 1, which recites the patented navigation system, and induce infringement of Claim 3, which recites the patented navigation method. At this stage of the cases, Defendants do not challenge the direct infringement claims. However, Defendants move to dismiss the induced infringement claims, arguing that Beacon has not alleged any facts to put Defendants on notice of the alleged inducement or adequately pleaded intent to encourage infringement.

"To prove inducement, the patentee must show direct infringement, and that the alleged infringer 'knowingly induced infringement and possessed specific intent

16

to encourage another's infringement.'" *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010), *aff'd on other grounds*, 564 U.S. 91 (2011) (quoting *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005)). "For an allegation of induced infringement to survive a motion to dismiss, a complaint must plead facts plausibly showing that the accused infringer 'specifically intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (alterations in original) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)).

For the reasons set forth below, the Court finds that, in addition to direct infringement, Beacon has plausibly alleged knowledge of the patent and knowledge of infringement, and has adequately pleaded intent to encourage infringement. Because the FACs therefore state plausible claims of induced infringement, the Court will **DENY** Defendants' motions to dismiss.

## A. Defendants' Instructions

Defendants' motions to dismiss center on Beacon's allegations that, along with the accused vehicles, Defendants provide "instructions, user manuals, or technical assistance" with "instructions to use" the accused navigation systems. FAC ¶¶ 23-24, ECF No. 60, PageID.3226. While Defendants focus on the specific intent

requirement, as an initial matter, Defendants take issue with the alleged instructions for being general to using the accused navigation systems and not specific to performing the patented navigation method. Similarly, Defendants take issue with Beacon's allegations for failing to specifically identify, cite, and quote the alleged instructions. Defendants argue that in the absence of specific instructions, Beacon has not alleged any facts to put Defendants on notice of the alleged inducement.

After reviewing numerous Federal Circuit decisions addressing induced infringement claims based on instructions, the Court makes two observations. First, while specific instructions may be necessary in some cases, the question is not simply whether the accused infringer has provided general instructions or specific instructions. Rather, the question in all cases is whether the accused infringer has provided instructions to use a product in an infringing manner. Second, whether the accused infringer has provided instructions to use a product in an infringing manner is necessarily informed by the manner in which the product infringes.

On the second point, induced infringement cases fall into two general categories. The first category of cases involves products that can be used in either an infringing manner or a non-infringing manner. In these cases, the Federal Circuit has upheld findings of no induced infringement when the accused infringers provided instructions for using the products but not in an infringing manner. For example, in *Vita-Mix*, a company sold blenders whose stir stick could be left in an

infringing default position or operated with a non-infringing stirring motion. *Vita-Mix*, 581 F.3d at 1328. While the company provided instructions for using the blenders, the instructions directed customers to use the stir stick. *Id.* at 1328-29. In affirming the district court's summary judgment of no induced infringement, the Federal Circuit held that intent to induce infringing use could not be inferred because the instructions taught the non-infringing stirring motion. *Id.* at 1329.

In contrast, the second category of cases involves products that necessarily infringe by operation of the accused device. In these cases, the Federal Circuit has upheld findings of induced infringement when the accused infringers provided general instructions for using the products. For example, in *Water Technologies*, a consultant helped a manufacturer make straws using an infringing resin. *Water Techs.*, 850 F.2d at 668. In addition to inducing the manufacturer to infringe by making the straws, the district court found that the consultant induced customers to infringe by using the straws. *Id.* In affirming the district court's judgment of induced infringement, the Federal Circuit held that intent to induce infringing use could be inferred from evidence that the consultant prepared consumer use instructions. *Id.* at 669.

Relevant to the cases at bar, the second category of cases also arise in the context where the performance of patented methods takes place on computers. For example, in *Lucent Technologies*, the jury found that Microsoft sold software

products with infringing tools and induced users to infringe by using the tools. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1322 (Fed. Cir. 2009). In affirming the district court's denial of JMOL of no induced infringement, the Federal Circuit held that intent to induce infringing use could be inferred from expert testimony that Microsoft's documentation encouraged users to use the tools. *Id.* at 1323. Similarly, in *i4i*, the jury returned a general verdict finding that Microsoft infringed in connection with sales of software products with an infringing XML editor. *i4i*, 598 F.3d at 848. As to induced infringement on the theory that Microsoft induced users to infringe by using the XML editor, the jury heard evidence that using the XML editor as directed by Microsoft's instructions constituted infringement. *Id.* at 851-52. In affirming the jury's finding, the Federal Circuit held that the instructions were substantial evidence that Microsoft intended the software products to be used in an infringing manner. *Id.* at 852.

Consistent with the second category of cases, the Court finds that, in the context of the cases at bar, the alleged instructions need not be specific to performing the patented navigation method because Beacon has plausibly alleged that the accused navigation systems necessarily infringe in normal operation. In their motions to dismiss, Defendants cite cases involving products that can be used in either an infringing manner or a non-infringing manner, without distinguishing between them and cases involving products that necessarily infringe. In fact,

although taking issue with the alleged instructions for being general to using the accused navigation systems, Defendants do not address Beacon's direct infringement allegations. In the FACs, Beacon does not suggest that customers may use the accused navigation system in either an infringing manner or a non-infringing manner. Rather, Beacon alleges that the accused navigation systems, when used, and therefore customers, by using them, practice the patented navigation method. FAC ¶¶ 24-25, ECF No. 60, PageID.3226. In support of these allegations, Beacon cites the behavior of position cursors during testing to allege step-by-step performance of the patented navigation method when routes are programmed into the accused navigation systems and the accused vehicles travel on the routes. *Id.* ¶¶ 26-29, ECF No. 60, PageID.3227-3229. Consistent with Beacon's allegations, the '511 Patent contemplates that the disclosed propagation techniques are implemented during the "normal operation" the navigation system. '511 Patent 9:9-12.

Accepting Beacon's allegations as true and construing the FACs in the light most favorable to Beacon, the Court finds that Beacon has plausibly alleged that the accused navigation systems necessarily infringe in normal operation, and therefore that merely using the accused navigation systems constitutes infringement. It follows that Defendants' arguments for specific instructions simply do not apply to the context of the cases at bar.

In support of their arguments for specific instructions, Defendants also cite this Court's *Michigan Motor* decision. In *Michigan Motor*, the patentee alleged that automakers sold vehicles with infringing throttle systems and induced customers to infringe by using the vehicles. *Mich. Motor Techs. LLC v. Volkswagen Aktiengesellschaft*, 472 F. Supp. 3d 377, 379-80 (E.D. Mich. 2020) (Lawson, J.). Applying the Supreme Court's *Twombly*/*Iqbal* pleading standard to the law of induced infringement, the Court dismissed the induced infringement claim after finding that the patentee failed to adequately plead intent to encourage infringing use. *Id.* at 385-86. The patentee alleged "nothing more" than that the automakers, "with specific intent or willful blindness," induced infringing use by "distributing" the vehicles and providing "materials and/or services related to" the vehicles. *Id.* at 385 (quoting complaint). "These allegations," the Court explained, "amount only to threadbare recitals of the cause of action's elements, supported by mere conclusory statements, which do not suffice to survive a motion to dismiss." *Id.* (quotations and alterations omitted) (citing *Iqbal*, 556 U.S. at 678). In connection with failing to identify any "material" or "service" and any "person or entity who received" them, the allegations suffered from the "glaring deficiency" of failing to support a reasonable inference of intent to encourage infringement. *Id.* at 385-86 (citing numerous patent cases).

Considering Beacon's allegations as a whole, the Court finds that *Michigan Motor* is distinguishable. Initially, standard items such as "user manuals" and "instructions to use" the accused navigation systems are more factual than "materials and/or services related to" the accused vehicles. Moreover, elsewhere in the FACs, Beacon sets forth additional factual content concerning the alleged instructions and their relevance to the alleged inducement. Specifically, Beacon identifies the accused vehicles as Defendant-branded vehicles that Defendants make, import, and sell. FAC ¶¶ 16-17, ECF No. 60, PageID.3223-3224. Beacon alleges that, in the accused vehicles, customers may use the accused navigation systems for navigation functionality. *Id.* ¶¶ 23-24, ECF No. 60, PageID.3226. In more detail, Beacon alleges that customers may use navigation functionality by programming routes into the accused navigation systems. *Id.* ¶¶ 26-29, ECF No. 60, PageID.3227-3229.

In the context of the automotive industry, Beacon's allegations are not too conclusory for the Court to accept as true that Defendants provide instructions to use the accused navigation systems. In their motions to dismiss, Defendants do not question the reasonable likelihood of the alleged instructions. For example, with respect to the identified Defendant-branded vehicles that Defendants allegedly make, import, and sell, Defendants do not question that standard items such as user manuals are reasonably likely to contain instructions that customers may follow to program routes and use the accused navigation systems for navigation functionality.

23

Instead, Defendants appear to take issue with Beacon's allegations for being *allegations* and not *evidence*. Defendants argue that by failing to specifically identify, cite, and quote the alleged instructions, Beacon has not alleged any facts to put Defendants on notice of the alleged inducement. The Court disagrees. Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has instructed that "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quotations and alterations omitted) (citing *Twombly*, 550 U.S. at 555). Likewise, the Federal Circuit has instructed that a patentee is not required to "prove its case at the pleading stage." *Bill of Lading*, 681 F.3d at 1339. "As the Supreme Court has explained, the plausibility requirement is not akin to a 'probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged." *Id.* at 1341 (alteration in original) (quoting *Twombly*, 550 U.S. at 556). In accordance with these principles, the Court finds that, in the context of the cases at bar, specific instructions are not necessary to put Defendants on notice of the alleged inducement.

24

## B.    Defendants' Intent to Encourage Infringement

As to the specific intent requirement, the Federal Circuit has held that "specific intent may be inferred from circumstantial evidence where a defendant has both knowledge of the patent and specific intent to cause the acts constituting infringement." *Ricoh Co. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1342 (Fed. Cir. 2008). In the FACs, Beacon alleges that, in the accused vehicles, customers may use the accused navigation systems for navigation functionality, that, with knowledge of the '511 Patent, Defendants provide instructions to use the accused navigation systems, and that when they follow the instructions, customers practice the patented navigation method. FAC ¶¶ 22-24, ECF No. 60, PageID.3226. Beacon does not explicitly allege intent to encourage infringement. However, in the briefs, Beacon argues that its allegations as a whole give rise to a reasonable inference that Defendants intended to encourage infringing use of the accused navigation systems.

In their motions to dismiss, Defendants argue that Beacon has not adequately pleaded intent to encourage infringement. However, Defendants do not address either Beacon's knowledge allegations or Beacon's direct infringement allegations. Nor do Defendants question that the alleged instructions support a reasonable inference that Defendants provide the accused vehicles with the intention that customers will use the accused navigation systems. Rather, Defendants take issue with the alleged instructions for being general to using the accused navigation

systems and not specific to performing the patented navigation method. According to Defendants, intent to encourage infringement cannot be inferred from the "ordinary act" of providing "standard" instructions for using an infringing product. On the assumption that specific instructions are necessary, Defendants argue that providing the alleged instructions is not an active step to encourage infringement because they do not instruct customers how to use the accused navigation system in an infringing manner. Citing the claim language, Defendants argue that to take an active step to encourage infringement, Defendants would have to provide specific instructions to calculate the current position of the accused vehicles by integrating rotated velocity vectors.

Accepting Beacon's allegations as true and construing the FACs in the light most favorable to Beacon, the Court finds that Beacon has adequately pleaded intent to encourage infringement.

Initially, the Court finds that Beacon has plausibly alleged knowledge of the patent and knowledge of infringement. In the FACs, Beacon alleges that Defendants had knowledge of the '511 Patent based on pre-suit letters, the original complaints, and the ITC complaint. FAC ¶ 22, ECF No. 60, PageID.3226. As opposed to knowledge of the patent, Beacon does not explicitly allege knowledge of infringement. However, in the briefs, Beacon cites ITC regulations to point out that the ITC complaint included claim charts applying the asserted claims of the '511

Patent to representative accused vehicles. *See* 19 C.F.R. § 192.12(a)(9)(viii). The Court takes no position on the letters, which are not of record, and whose content is not described in the FACs. However, because the documents are "referred to" in the FACs and "central to" the induced infringement claims, the Court will consider the original complaints of record and the publicly available ITC complaint. *Bassett*, 528 F.3d at 430. Based on at least the original complaints and the ITC complaint, Beacon has plausibly alleged that Defendants had knowledge of the '511 Patent. Similarly, based on at least the ITC complaint and its claim charts, Beacon has plausibly alleged that Defendants had knowledge that using the accused navigation systems constitutes infringement.

Moreover, as set forth above, Beacon alleges that Defendants provide instructions to use the accused navigation systems. As well, Beacon has plausibly alleged that the accused navigation systems necessarily infringe in normal operation. Because Beacon has plausibly alleged knowledge of the patent and knowledge of infringement, and that Defendants provide instructions to use the accused navigation systems when their mere use constitutes infringement, Beacon's allegations as a whole give rise to a reasonable inference that Defendants acted with the specific intent to encourage customers to infringe the patented navigation method. *Ricoh*, 550 F.3d at 1342. *See also MEMC*, 420 F.3d at 1378 n.4 (holding that intent to cause infringement can be presumed from knowledge of the patent and intent to induce the

acts constituting infringement); *Lifetime*, 869 F.3d at 1380 (on a motion to dismiss, holding that plausible allegations of knowledge of the patent and intent to induce the acts constituting infringement support a reasonable inference of intent to induce infringement).

In support of their arguments for specific instructions, Defendants cite the principle that "ordinary acts incident to product distribution, such as offering customers technical support or product updates," do not "support liability in themselves." *Grokster*, 545 U.S. at 937. But this principle does not, as Defendants argue, broadly preclude inferring intent to encourage infringement from "standard" instructions for using an infringing product. Rather, as noted above, the question is whether the accused infringer has provided instructions to use a product in an infringing manner. *See*, *e.g.*, *id.* at 936 ("Evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use.") (quotation, alteration, and citations omitted); *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 905 (Fed. Cir. 2014) ("Providing instructions to use a product in an infringing manner is evidence of the required mental state for inducing infringement."). Likewise, whether the accused infringer

has provided instructions to use a product in an infringing manner is necessarily informed by the manner in which the product infringes. In cases involving products that necessarily infringe in normal operation, the Federal Circuit has upheld findings of induced infringement when the accused infringers provided general instructions for using the products. *See*, *e.g.*, *i4i*, 598 F.3d at 851-52 (affirming jury's finding of induced infringement where Microsoft sold software products with an infringing XML editor and using the XML editor as directed by Microsoft's instructions constituted infringement).

Confirming the above specific intent analysis, the result is consistent with other decisions from this District where the Court denied motions to dismiss induced infringement claims based on similarly general instructions or advertisements. For example, in *NISTAC*, the patentee alleged that automakers sold vehicles with infringing pistons and induced customers to infringe by using and selling the vehicles. *Nat'l Inst. for Strategic Tech. Acquisition & Commercialization v. Nissan of N. Am.*, 2012 U.S. Dist. LEXIS 117941, at *5-*6, *11, *17 (E.D. Mich. Aug. 21, 2012) (Steeh, J.) ("*NISTAC*"). The Court found that the patentee adequately pleaded intent to encourage infringing use and sales by alleging that the automakers marketed the vehicles. *Id.* at *19. Similarly, in *Service Solutions*, the patentee alleged that a supplier made infringing tire pressure monitoring system (TPMS) tools and induced customers to infringe by using the TPMS tools. *Serv. Sols. U.S., LLC v. Autel.US*

*Inc.*, 2013 U.S. Dist. LEXIS 150036, at \*2-\*4 (E.D. Mich. Oct. 18, 2013) (Berg, J.). With respect to the intent requirement, the patentee alleged that the supplier provided instructions for using the TPMS tools and advertised and promoted their benefits. *Id.* at \*3-\*4. The Court found that the patentee adequately pleaded intent to encourage infringing use by alleging that the supplier advertised an infringing use. *Id.* at \*26 (citing *Bill of Lading*, 681 F.3d at 1341-42).

### C.   Summary

In the context of the cases at bar, the FACs plausibly state claims of induced infringement. In addition to direct infringement, Beacon has plausibly alleged knowledge of the patent and knowledge of infringement. Because Beacon has plausibly alleged that the accused navigation systems necessarily infringe in normal operation, the alleged instructions to use the accused navigations systems need not be more specific to plausibly show that Defendants specifically intended to encourage infringement.

### V.   CONCLUSION

For the reasons stated in this opinion and order, the Court will **DENY** Defendants' motions to dismiss.

**SO ORDERED.**

Dated:  July 28, 2023                    s/Mark A. Goldsmith
      Detroit, Michigan                    MARK A. GOLDSMITH
                                      United States District Judge